UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MAMOLA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JP MORGAN CHASE BANK, N.A., an Ohio corporation, et al.,<br><br>    Defendants. | No. 2:14-cv-02688-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs James and Laurie Mamola ("Plaintiffs") initiated this action on August 29, 2014, in Sacramento County Superior Court against JP Morgan Chase Bank, N.A., as successor by merger to Chase Home Finance, LLC ("Chase"), Federal National Mortgage Association ("Fannie Mae"), and Quality Loan Service Corporation ("Quality") (collectively "Defendants"). Compl. 1, Ex. 1, ECF No. 1-1. Defendants Chase and Fannie Mae removed the case to this Court on November 14, 2014. Plaintiffs subsequently filed a motion to remand, which was denied, and Defendants filed a motion to dismiss, which was granted with leave to amend. ECF No. 17. Plaintiffs timely filed a Second Amended Complaint ("SAC"), and Defendants have now moved to dismiss that

///

///

1  SAC as well.  ECF No. 22.  For the following reasons, Defendants' instant Motion is
2  GRANTED, again with leave to amend.[1]

## BACKGROUND[2]

6  In April 2007, Plaintiffs obtained a home loan, executing a Note secured by a Deed of Trust to secure the purchase of their home (the "Property").  A little over two years later, Plaintiffs, who were then current on their mortgage payments, contacted their loan servicer, the predecessor to Defendant JP Morgan Chase Bank, N.A., to attempt to negotiate a loan modification.  Plaintiffs were advised they would not be considered for a modification program until they had missed payments.  They thereafter stopped making mortgage payments and, in August 2009, applied to have their loan modified.  Over the course of the next several months, Chase repeatedly requested financial documentation, many times requesting the same documents Plaintiffs had already previously provided.  In fact, according to Plaintiffs, they submitted the same packets of documents to Chase on at least four separate occasions.

Eventually, in March 2010, Plaintiffs were offered a trial payment plan.  Under that plan, Plaintiffs were required to make three consecutive timely payments, after which time Chase would contact Plaintiffs as to how future payments should be made.  According to plaintiffs, while they made the requested payments, Chase never contacted them about any further remittance despite its agreement to do so.  Instead, Chase recorded a Notice of Default on Plaintiffs' loan, and, subsequently, in July 2010, recorded a Notice of Trustee's Sale.

In response, Plaintiffs filed for bankruptcy, although they did not schedule their instant claims as required by the bankruptcy court.  Defs.' Request for Judicial Notice

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

[2] Unless otherwise indicated, the following facts are taken, at times verbatim, from the SAC (ECF No. 19).

("RJN"), ECF No. 8-2, Exs. A-C.  According to Plaintiffs, at the time they filed their bankruptcy petition they still believed that Chase's bankruptcy attorney was working with them in good faith to resolve the loan modification issues.  As such, they had no subjective reason to believe any claims such as those now asserted by way of this lawsuit had arisen.  Eventually, on October 25, 2010, Plaintiffs' debts were discharged. RJN, Exh. D.

In the meantime, however, while the bankruptcy proceedings were ongoing, Chase continued to request from Plaintiffs additional financial documentation relevant to their modification application.  During this time, Chase also purportedly foreclosed on the Property, later realized that sale had been in error, rescinded it, and dismissed an unlawful detainer action it had filed against Plaintiffs.  Plaintiffs thereafter were permitted to submit a new loan modification application.  Overall, Plaintiffs spent approximately two years attempting to secure a modification before they were finally advised by Chase in February 2011 that they did not qualify based on their income.  The Property was sold at auction on September 21, 2012.  According to Plaintiffs, had they known at the outset that they would not qualify for a loan modification, they could have taken steps to cure their default and would not have lost their home.

As a consequence, Plaintiffs initiated this action.  Defendants have now moved to dismiss the operative SAC, and, for the following reasons, that Motion is GRANTED.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[3] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

---

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

3

statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Id. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no

4

"undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

Plaintiffs allege six causes of action in their SAC: (1) intentional misrepresentation; (2) negligent misrepresentation; (3) negligence; (4) violation of California Business and Professions Code § 17200; (5) unjust enrichment; and (6) promissory estoppel. Defendants move to dismiss Plaintiffs' SAC on a number of grounds, including, among others, that: (1) Plaintiffs are judicially estopped from bringing their claims; (2) all causes of action are barred by the applicable statutes of limitations; and (3) Plaintiffs' claims are all fraud-based and pled with insufficient particularity under Rule 9(b). Defendants' arguments are persuasive, for the most part, and dispose of the entire SAC.

**A.    Judicial Estoppel**

This Court dismissed Plaintiffs' original Complaint on the basis of judicial estoppel. ECF No. 17. More specifically, because Plaintiffs failed to declare their

1  potential claims against Defendants in the bankruptcy court, the Court concluded they
2  were estopped from pursuing those claims here.  Id.  In their SAC, however, Plaintiffs
3  allege that their failure to schedule the instant claims was a matter of inadvertence or
4  mistake and thus should not prevent them from pursuing those claims now.  Plaintiffs
5  purportedly did not realize at the time they filed for bankruptcy they might have a claim
6  against Defendants because they thought they were still negotiating with Chase through
7  its employees to try to modify their loan.  SAC ¶¶ 39-41.

8  Plaintiffs' are correct that judicial estoppel may be inappropriate "when a party's
9  prior position was based on inadvertence or mistake."  New Hampshire v. Maine, 532
10 U.S. 742, 753 (2001) (internal quotation marks omitted).  "Inadvertence" and "mistake"
11 have been interpreted broadly by the Ninth Circuit.  See Ah Quin v. Cnty. of Kauai Dep't
12 of Transp., 733 F.3d 267, 276 (9th Cir. 2013) ("inadvertence or mistake" not limited to
13 plaintiff's knowledge of claim and motive to conceal).  Based on the broad interpretations
14 of these terms, Plaintiffs appear to have pled sufficient facts to overcome Defendants'
15 judicial estoppel argument.

16 Defendants nonetheless disagree, arguing that even though their instant Motion
17 was brought pursuant to Rule 12(b)(6), Plaintiffs must offer some "evidence" of their
18 inadvertence or mistake.  See Dzakula v. McHugh, 746 F.3d 399, 402 (9th Cir. 2014)
19 (stating that Ah Quin was distinguishable because the Plaintiff in Dzakula "presented no
20 evidence, affidavit or otherwise, explaining her initial failure to include the action on her
21 bankruptcy schedules.").  Apparently, despite the clear allegations set forth in Plaintiffs'
22 complaint, to survive the instant motion to dismiss, Defendants would also have this
23 Court require Plaintiffs to submit those same statements in a sworn affidavit.

24 Defendants' argument in this regard runs directly contrary to the applicable
25 standard of review, which requires the Court to accept all allegations in the complaint as
26 true and to make all inferences in favor of the non-moving party.  See Cahill, 80 F.3d at
27 337-38.  At the motion to dismiss stage, it is superfluous to require plaintiffs to provide
28 some evidence, by affidavit or otherwise, regurgitating the allegations in their complaint

6

unless a rule or statute provides otherwise. See Fed. R. Civ. P. 11(a) ("Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit.").

Indeed, Defendants' only authority, Dzakula, 746 F.3d 399, is not helpful. In that case, the appellate court made much of the fact that the plaintiff, in opposition to a motion to dismiss, and even after the dismissal was granted, including on appeal, never provided any evidence that her failure to schedule claims in the bankruptcy court was anything other than deceitful. That case is entirely distinguishable.

As an initial matter, that plaintiff amended her bankruptcy schedule after a motion to dismiss was filed. See Dzakula, at 401-02. It follows then, that the complaint in that case was silent as to why the plaintiff failed to schedule her claims as assets. Here, to the contrary, Plaintiffs amended their bankruptcy schedule before they filed their initial complaint and explicitly pled facts supporting their inadvertence or mistake in the bankruptcy court. SAC ¶ 42. That is all that is required under the Federal Rules.

Moreover, in Dzakula, the bankruptcy proceedings were apparently still ongoing at the time the plaintiff initiated her civil suit. See id. at 400 ("After Plaintiff added this action to the schedules, the bankruptcy court discharged her debts and closed the case."). It is thus clear that the plaintiff knew about her claims during the time that they should have been scheduled. That court consequently concluded that, "particularly in light of the timing of Plaintiff's amendment [and her providing no contrary evidence], no reasonable fact-finder could conclude that the omission was inadvertent or mistaken." Dzakula, 746 F.3d at 401. Both the district court and the appellate court were persuaded by the fact that the plaintiff "could have" provided a declaration in response to the motion to dismiss explaining her failure, but did not. Id. Nor did she move for reconsideration or try to supplement the record at any point. Id. That said, by pointing out the opportunities that plaintiff had to make her case, the appellate court was not directing lower courts to require declarations in every instance. It was instead reasoning that, given the plaintiff's complete failure to explain at any point why she did not

7

schedule her claims, the district court did not abuse its discretion when it concluded her actions were deceitful and dismissed her case on judicial estoppel grounds. Plaintiffs in this case, on the other hand, clearly aver that they had no subjective knowledge of their claims against Defendants when they filed their bankruptcy schedules and provide facts as to why that was the case.

Finally, the discussion from Dzakula on which Defendants rely in turn depended entirely on Ah Quin for the proposition that a plaintiff should provide some evidence supporting her theory of inadvertence or mistake to withstand a motion to dismiss. Dzakula, 746 F.3d at 401-02. However, the procedural posture in Ah Quin was much different; the dispute in that case went up on a motion for summary judgment, not a motion to dismiss. Ah Quin, 733 F.3d at 270, 277-78 ("viewing the evidence in the light most favorable to Plaintiff, and thus crediting her affidavit, . . . her bankruptcy filing was inadvertent."). Accordingly, unlike here, by definition some evidence was required to defeat that motion.

In sum, this Court concludes that the allegations in the amended complaint are sufficient to overcome Defendants' judicial estoppel defense.

**B.     Statute of Limitations**

As pled, Plaintiffs' claims are nonetheless barred on statute of limitations grounds. According to Defendants, Plaintiffs' claims all accrued sometime between August 2009 and July 2010, and the longest statute of limitations applicable to any of Plaintiffs' causes of action is four years. By that logic, since Plaintiffs' initial complaint was not filed until August 29, 2014, each of Plaintiffs' claims is time-barred. Defendants' argument is well taken.

As a general matter, federal courts apply state statutes of limitations in diversity actions. See Guar. Trust Co. of N.Y. v. York, 326 U.S. 99, 109-10 (1945). In California, "the nature of the right sued upon, not the form of action or the relief demanded, determines the applicability of the statute of limitations." Jefferson v. J.E. French Co., 54 Cal. 2d 717, 718 (1960). "A cause of action accrues when the claim is complete with all

1  of its elements." Slovensky v. Friedman, 142 Cal. App. 4th 1518, 1528 (2006), as
2  modified on denial of reh'g (Oct. 12, 2006) (citation omitted). "Although this ordinarily
3  occurs on the date of the plaintiff's injury, accrual is postponed until the plaintiff either
4  discovers or has reason to discover the existence of a claim, i.e., at least has reason to
5  suspect a factual basis for its elements." Id. at 1528-29 (citations omitted). Moreover,
6  there is no requirement that damages must fully materialize before a cause of action
7  accrues. See, e.g., Budd v. Nixen, 6 Cal. 3d 195, 201 (1971); Bell v. Hummel & Pappas,
8  136 Cal. App. 3d 1009, 1016 (2d Dist.1982) ("It is not necessary that all or even the
9  greater part of the damages have to occur before the cause of action arises"),
10 disapproved on other grounds in Laird v. Blacker, 2 Cal. 4th 606, 616 (1992), cert.
11 denied, 506 U.S. 1021 (1992).
12      Here, the gravamen of Plaintiffs' SAC is fraud. Each cause of action is based on
13 purported misrepresentations made by Defendants that "fraudulently induced [Plaintiffs]
14 to participate in the [loan] modification." SAC ¶¶ 52, 63; see, e.g., id. ¶ 67 (Chase
15 "violate[ed] [their] promises and representations to Plaintiffs"); id. ¶ 75 (citing
16 Defendants' fraudulent conduct as the cause of Plaintiffs' damages); id. ¶ 78 (Chase
17 "engaged in the [loan] modification process . . . with no intention of . . . granting
18 [Plaintiffs] a modification"); id. ¶ 83-84 (Chase never contacted Plaintiffs to arrange
19 future payments after promising to do so). Accordingly, Plaintiffs' first, second, third,
20 fifth, and sixth claims must be brought within three years of accrual. See Cal. Code Civ.
21 Proc. § 338(d) (fraud-based claims do not accrue "until the discovery, by the aggrieved
22 party, of the facts constituting the mistake"). Although Plaintiffs' fourth cause of action
23 for violation of California Business and Professions Code § 17200 is also essentially
24 based on fraud, actions brought under § 17200 are instead subject to a four-year
25 limitations period.
26      Based on the foregoing, the parties do not dispute that Plaintiffs had to bring their
27 claims within three or four years of accrual, but they disagree as to the accrual date.
28 According to Plaintiffs, none of their causes of action accrued until the sale of the

1  Property on September 21, 2012.  Plaintiffs reason that, since they "still had the
2  opportunity to correct their conduct," the common element of damages in each of their
3  claims had yet to materialize.  Pls.' Opp'n at 5:28-6:2, ECF No. 23.  Therefore, Plaintiffs
4  argue, what is at issue is actual accrual, not delayed discovery.

5  Plaintiffs' argument might be persuasive if their damages were related only to the
6  sale of the Subject Property.  However, in addition to the loss of their interest in the
7  Property, each of their causes of action seeks damages for fees and penalties,
8  increased interest and arrears, or the negative impact to Plaintiffs' credit.  SAC ¶¶ 52,
9  63, 67, 72, 76, 80-81, 89.  Any fees and penalties incurred by Plaintiffs began to
10 materialize upon default of their loan payments in August 2009.  See, e.g., Budd,
11 6 Cal. 3d at 201; Bell at 1016.  At the latest, all elements had materialized by July 2010
12 when Chase recorded a Notice of Trustee's Sale for the Subject Property and Plaintiffs
13 filed for bankruptcy to stop the sale of their home.  SAC ¶ 20.

14 Accordingly, since Plaintiffs' claims accrued in July 2010 and the claim with the
15 longest limitations period is four years, Plaintiffs must have filed their initial complaint by
16 July 2014.  Plaintiffs' August 28, 2014, complaint was thus untimely, and all of Plaintiffs'
17 claims are barred.  Defendants' Motion to Dismiss on this theory is GRANTED, with
18 leave to amend.

19 **C.   Inadequacy of Plaintiffs' claims under Rule 9(b)**

20 Finally, Defendants argue that Plaintiffs' claims should be dismissed because they
21 are all fraud-based and fail to meet the heightened pleading standard of Rule 9(b).  This
22 argument is also well taken.

23 When a claim for fraud is raised, Rule 9(b) provides that "a party must state with
24 particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "A pleading is
25 sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the
26 defendant can prepare an adequate answer from the allegations." Neubronner v.
27 Milken, 6 F.3d 666, 671-72 (9th Cir. 1993) (internal quotations and citations omitted).
28 ///

1  "The complaint must specify such facts as the times, dates, places, benefits received,
2  and other details of the alleged fraudulent activity." Id. at 672.
3     Plaintiffs contend that the less-stringent Rule 8 should apply because "[w]hile
4  [they] do allege six <u>instances</u> of false or misleading statements . . ., [such] statements
5  are not [a] basis for <u>individually dismissible</u> causes of action [as they] were made in
6  furtherance of the scheme to defraud them." SAC 8 n.5.  Not only do Plaintiffs fail to cite
7  any authority to support their contention, but Rule 9(b) is triggered by a party's simply
8  "alleging fraud or mistake . . . ." Fed. R. Civ. P. 9(b).  Regardless of whether the
9  individual misrepresentations were part of an overall scheme to defraud Plaintiffs, Rule
10 9(b) was triggered because Plaintiffs allege instances of false or misleading statements
11 in support of each of their causes of action.
12    That said, Plaintiffs offer no factual support as to why they believe Defendant
13 Chase's statements were false.  While Plaintiffs claim they do not believe they had to be
14 in default to be considered for a loan modification, they do not provide any factual
15 allegations to support their conclusion.  SAC ¶ 50.  Plaintiffs' allegation that Chase never
16 had any intention of granting their modification request is similarly unsupported.  Id.
17 Finally, Plaintiffs provide no facts to back up their conclusory assertion that Chase
18 induced them to seek a modification so Defendants could earn servicer fees.  Id. ¶ 48.
19 As such, Plaintiffs fail to identify the circumstances constituting the alleged fraud
20 sufficient to allow Defendants to prepare an adequate response.[4]  Defendant's Motion is
21 thus GRANTED on this basis as well.
22 ///
23 ///
24 ///
25 ///

---

[4] Plaintiffs' additional argument that California courts "have relaxed [the Rule 9(b) heightened pleading] requirement when the party being sued is a corporate defendant" is also rejected.  Pls.' Opp'n 8:5-7.  Pleading standards are a matter of federal law and thus claims alleging fraud brought in federal court must comply with Rule 9(b). Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

11

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 22) is GRANTED with leave to amend.  Plaintiffs may, but are not required to file an amended complaint.  If no amended complaint is filed within the twenty (20) days following the date this Order is electronically filed, Plaintiffs' Second Amended Complaint will be dismissed with prejudice in its entirety upon no further notice to the parties.

IT IS SO ORDERED.

Dated:  November 9, 2015

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT